The next case on the calendar is Williamson v. Maicol. Thank you, your honor. Good morning. May it please the court. Joshua Cotter from Legal Services of Central New York for the Plaintiff Appellant. General custody women held at the Oneida County Jail are housed in small, dank housing units and given only a fraction of the privileges and benefits afforded to their similarly situated male counterparts simply because they are women. Plaintiffs are requesting that this court reverse the district court's of the request for a preliminary injunction for three reasons. First, the district court wrongly held that plaintiffs are required to meet the higher mandatory standard when plaintiff's request is simply to reinstate the status quo and therefore more properly analyzed under the prohibitory standard. Second, the district court made several factual and legal errors in holding that women and men are given substantially equivalent benefits in housing conditions. And finally, although the district court correctly held that intermediate scrutiny applies to plaintiff's claims, the court did not undergo the demanding and searching analysis the intermediate scrutiny requires. Turning to the standard, the status quo for preliminary injunction purposes is the last uncontested status between the parties. Here, that's clearly when the women were in the padre units and given substantially equivalent benefits that the men receive. However, our position is we meet either the mandatory or prohibitory standards, so I'll turn to the merits. And I think perhaps the most telling error in the district court's decision was their failure to really appreciate or even analyze the stark differences in housing conditions that women are placed under at the Oneida County Jail. Male inmates are housed in 80 square foot cells. Women are housed in cells that are half as large. Male cells have a window so they can get natural sunlight and look out and see the outside. Women do not. Male cells have a desk so they can sit and write letters home to their family. Women do not. And perhaps most importantly, women are held in open bar cells, which means if they have to use the toilet which is in their cell, other women, guards, or anyone walking on their unit can see inside. The cells in the padre units, where men are housed, have a solid door with a small window that allows the facility to have security but also gives the inmates some semblance of privacy. Men's units also have air conditioning, multiple cable televisions, and also men have significantly more freedom of movement. In the women's unit, there's just a small hallway about three or four tables on it. Men have an attached recreation yard. They have a small room to do video calls. They have many tables where they can play games with other men. Women are confined simply to a small hallway basically and denied any kind of real freedom of movement other than walking up and down the hallway. Women also do not have access to make food or access to microwave, hot and cold water regularly. They don't have access to the same entertainment benefits or exercise benefits men have. Women are given two hours of recreation a day, which is off their unit. Men have regular access on their own unit to a recreation yard so they can come and go as they please into that recreation yard. A recreation yard, which includes exercise equipment, which the women's small recreation yard that they get to go for two hours a day does not. Also, men have better access to visits when during this time of COVID-19 visits to the jail are obviously stopped. Men get access to free video visits with their families. Women who are trustees do not get that benefit at all. Do you mind addressing the exhaustion issue? Let's say, assume for the moment that we agree with you that the pod units are superior on a variety of dimensions to the linear units. Why isn't exhaustion a difficulty for you in establishing a likelihood of success on the merits? Yes, Your Honor. Exhaustion is a defendant's burden to prove. They have to prove the availability of the remedies. We, in our papers, have shown that women have regularly tried again and again and again to file complaints to address these obvious inequities between the units and obvious issues. We have received no response and got nowhere with the grievance process. The district court correctly found or held that there are issues of fact related to exhaustion. Actually, just yesterday, there was an exhaustion hearing held in the case. That issue will be resolved very shortly. It's our position that it isn't our burden to show that they did exhaust. It's the defendant's burden to show. They have not met that burden at the preliminary judgment. Well, it's your burden to show that there's a likelihood of success. If you haven't exhausted, then you're not going to succeed, right? Whether there's a dismissal on a complaint is beside the point. If you're not going to succeed in the long run, then that's really your burden to show a likelihood of success, right? Right. We did show, Your Honor, that there are at least issues of fact of whether or not the remedies were available. I don't think we have to show beyond— With respect to the benefits, you think? It seems to me that there's an issue of fact as whether or not the plaintiffs were discouraged from bringing grievances about housing assignments. But they brought complaints about various other of the conditions you talked about, and those were all resolved, weren't they? No, Your Honor. The defendants submitted, I think, nine or ten complaints that were resolved, but there is evidence in the record from declarations from women who submitted significantly more complaints than the jail has records of, and those complaints were not resolved, were unanswered. So there's also, as the district court correctly found, an issue of fact with regard to whether or not— But if they're unanswered, that doesn't end it, right? If they're unanswered, then you go to the next step in the process, right? There is a process in the prisons for what you do when your grievance is not answered, right? Only if the jail's grievance process provides for that. The jail's grievance process here, as outlined in their inmate handbook, doesn't provide for a remedy for an unanswered complaint or grievance. So if a complaint isn't answered and the jail's own policies, which we turn to when analyzing whether someone's exhausted or not, doesn't provide for a next step, then that inmate has done everything they could. I think this court recently held in Hays, I think a month ago or a few weeks ago, similarly at the end of the process in the docs context. Here, the same rationale would apply. The women did everything they could. They didn't receive an answer. Therefore, they have exhausted their administrative remedies in regard to that. Can I ask a question about the standard? You suggested the standard here should be intermediate scrutiny. I don't think defendants disagree necessarily, but I also thought prisons were treated to a different standard. I thought there needed to be just a reasonable relationship to a legitimate penological interest for prison policies. Why isn't that the standard here, since this is a prison? Right, Your Honor. I think that would be the Turner standard, which Your Honor just articulated. It doesn't apply because we're dealing with an issue of gender discrimination. Are you saying that men and women should be on the same floor? They should be in the same context? No, Your Honor. Our argument is they should be given substantially equivalent benefits and services. But so if the policy were to be that for men or women, whenever we fall below a certain threshold number of inmates, we go to the linear setup because it's cheaper and easier to run. Would that be discriminatory? It absolutely would, Your Honor. Cheaper and easier to run are administrative and cost-saving rationale, which is inappropriate under intermediate scrutiny. Addressing whether Turner applies, the Supreme Court in Johnson v. California, in the race context, held that heightened scrutiny applies because, although, as Your Honor recognizes, there are some rights in prison that inmates give up a little, such as speech, freedom of association, religion. The right to not be discriminated against on the basis of one's gender or race isn't a right someone gives up simply because they are incarcerated. In courts, the Ninth Circuit, in our brief, Harrison v. Kern, recently recognized this. The D.C. Circuit has found intermediate scrutiny applies. The Eighth Circuit also has, in summary orders, the Third and Sixth. Also, almost every district court, after Johnson, has found that intermediate scrutiny applies. And if the court would like further, obviously, the district court found here that intermediate scrutiny applies, and defendants really don't dispute that. But if the court would like further argument on that, we'd be more than happy to submit a letter brief after argument. But if the genders have to be separated, then the policy is that any, either gender, if men fall below a certain number, then they go, then they are sent to the linear units. Would that be a discriminatory policy? If those men who are the same classification as the women or whoever else they're being compared to are denied the same benefits as, you know, the other class, then yes, it would be discriminatory. Your view is that everybody has to get the same. So if there's a new prison, a brand new prison that is built, and it's bigger, more spacious, more modern, and better than the pods, and that is a designated women's facility, the men then have an equal protection claim because the conditions are better. I mean, I think that'd be a little different, Your Honor, if it was a whole different facility, right? This is the exact same facility. Women are housed in what the defendants on paper has recognized as a starkly different housing unit, which is for, you know, inmates who need, you know, severely restrictive housing, right? Inmates that are, I think in their paper, I think in their policies, it's like difficult to handle inmates, and that's where they put women without any evidence that women are more difficult to handle than men. They can't simply put women in these small, dank units because, you know, they're women, basically, is what they are doing, and they're denying them privacy, they're denying them equal access to their families, the same privileges that men have, and that's the discrimination that's happening here. They're denied the same recreation time, all just because there are women and there are fewer than them, and because jail populations are fluid, that doesn't mean that there's not going to be more women there tomorrow or the next day. It just doesn't deal with the underlying discrimination that women are facing their day-to-day. You've reserved two minutes of rebuttal time, and we will hear from the appellee. Your Honors, can you hear me okay? Yes, we can. I agree. Good morning, Your Honors, and may it please the Court, my name is Daniel Cartwright. I'm an attorney at Kennedy Shelton Liftec NOAC. I represent Sheriff Maciel, I'll just volunteer that, that's his pronunciation, Maciel, and also Chief Zurich. We request that the Court affirm the District Court's denial of the motion for a preliminary injunction that was submitted by the plaintiff for any of four reasons. First, Your Honors, there was a higher standard of proof that applied. It was the heightened standard for a mandatory injunction versus a prohibitory injunction that overlaid the other three reasons for affirmance based on the elements of a preliminary injunction, either for the plaintiff's failure to prove a likelihood of success on the merits or establish irreparable harm or establish that the public interest would be served by granting of the preliminary injunction. Now, just a couple of things that I would point out to the Court that I believe are important. First, while plaintiff's counsel outlined a number of differences between the men and the women that, you know, irrespective of whether they're true at this point, certainly there has been no allegation at any point that the women's privileges, benefits, or housing has fallen below minimum standards at any point. So, what we're discussing here are whether benefits, privileges, and housing between general custody men and general custody women are sufficiently different to establish discrimination or unequal treatment based on a level that's at all times above the minimum standard. Second, I would point out for the Court that as we argued in our appellee brief that nowhere in plaintiff's appeal brief was there any discussion of the PLRA. That was a major component of why the Court below held that there was at least questions of fact and why the plaintiff failed to establish a likelihood of success on the merits. I would submit that their failure to address the original papers constitutes either abandonment or reasons for affirmance based on our opposition papers, but I'll turn to my argument at this point. Your Honors, with respect to the heightened standard, there's the mandatory standard and there's the prohibitory standard. It's outlined pretty thoroughly in the Tom Doherty case that both parties have cited in their brief, the 1995 Second Circuit case. That case goes into great detail as to what constitutes a mandatory standard versus prohibitory standard. Essentially, it's whether the Court would be enforcing the status quo. Now, the status quo here, plaintiff's counsel would argue, would be returning back to the pods, but we would submit it's different. It would be moving from the linear housing units they are in now. Now, the plaintiffs were put into the linear housing units on January 22 of this year. The motion for preliminary injunction was filed about five months later, so approximately four to five months had passed between the time that this move had occurred and when the motion was filed. Why don't you address our decision in North American Soccer League? I mean, your adversary argues that it suggests that the baseline is not when the action was filed, but when the parties were not in dispute. The moment for that would be back in January when the women are in the pods. Sure. Your Honor, that's a correct iteration of the case. The case law in the Second Circuit differs based on what is mandatory and prohibitory. It's a continuum. In North American Soccer League, they did find that it was the last time of dispute, but again, here, there's been a passage of time of nearly four to five months where I'm not sure whether North American Soccer discusses passage of time specifically, but certainly here you have four to five months passing between the time there was what would be described as a dispute and certainly where they've been housed. And so to claim that the status quo would be upset by moving them back to the podular units, well, they've been in the linear units for almost four to five months. I mean, that would upset the status quo in and of itself because it would require these women, most of whom would not have been incarcerated by the time they would have been asked to move back during the motion, would have upset the status quo. So based on that continuum, I would submit that Thomas Doherty's standard more aptly applies to this situation than the facts that were in North American Soccer, although it does outline the standard of law as well. For those reasons, Your Honors, I would submit that the higher standard applies, although conversely with my opponent, we also would submit that we didn't need the higher standard. In fact, there was a failure to even meet likelihood of success based on the lower prohibitory standard. And the first reason that Your Honors pointed out was the failure to establish that there had been exhaustion under the PLRA. Now, the defendants acknowledge that normally, given that it's an affirmative defense, we do bear the burden. But as the court rightly pointed out, I believe, given that it was a preliminary injunction, it was the plaintiff's burden to at least establish that they would have a high likelihood of success on the merits based in part on their exhaustion of the PLRA. They did not do so. The court went through the record. They found that all of the complaints and grievances that had been submitted by the defendants had been resolved to the inmate's own signature. So, there had been at least evidence showing that every single one of the complaints or grievances filed were resolved in their favor. And therefore, there had not been exhaustion because there was no need to go any further, such as filing a lawsuit, because all of their complaints and grievances had been resolved to their satisfaction. So, in the absence of showing PLRA exhaustion, the court found at least there's a question of therefore, plaintiffs, you may not have a preliminary injunction granted. Now, plaintiff's counsel pointed out that yesterday we had an exhaustion hearing on this issue. I believe that's even further evidence to establish the reason and rationale for denying a preliminary injunction. Now, the district court below may rule in our favor. They may rule in the plaintiff's favor. But certainly, given the record that the district court had at the time that this motion was adjudicated, it certainly could not decide that there was a likelihood of success on the merits sufficient to find that the preliminary injunction should be granted. Your Honors, I would just, based on the balance of our papers, I would submit that there was not a finding of likelihood of success on the merits, but I'll turn to the irreparable harm. Based on exhaustion? That's what you think? You think that the district court denied their preliminary? Let me finish. Let me because they didn't establish likelihood of success on the merits because they failed to exhaust? Yes, in part. I may also, I guess, turn to the substantive part, which was that the parties, both the female general custody inmates and the male inmates enjoyed substantially similar benefits. The court also did engage in analysis based on the record that it had before it. It the declarations of the plaintiffs who outlined the alleged differences in the housing benefits and privileges. It also had before it the declaration of Chief Zirup, who rebutted all of those claims of differential treatment or unequal treatment. She attested as to the benefits and in the complaint, by virtue of the complaints and the grievances, it was established that things like water was provided after the inmates complained about it, meaning hot and cold water three times a day. It was established that TVs, after they were complained about, were provided. Computer tablets were provided on a ratio basis. Let's put aside water and TVs and tablets, but size, windows, the ability to congregate, the ability to go outside. Those are things that are remarkably different in the linear as opposed to the pod units. Would you agree? I would certainly agree fundamentally. Now, to the degree of which I might disagree, but certainly that there are differences. Yes, of course. There's going to be pretty minimal standards. Do you think that ends the inquiry? I don't believe that that ends the inquiry, Your Honor, but there is a claim here of unequal treatment. The claim is based on one that the men enjoy certain amenities that are available in their housing units and the women are deprived of others. What the jail has done is provided the court with evidence that it has endeavored to provide all of the amenities that the men have that the women were complaining that they didn't. Your Honors, I apologize for that. That was my timer. I would just submit briefly, because my time is up, that given that there's no finding of irreparable harm based on at all times there was a finding or there was no allegations of any harm. Lastly, the public interest would not be served because the court should not interfere with the prison's administration of their procedures, especially while in compliance with the Commission of Corrections. Your Honors, if you have any other questions, I'd be happy to answer. Otherwise, I would respectfully request that it affirm denial of the preliminary injunction motion and affirm the district court's ruling. I have a question if it's all right. Yes, please go ahead. In terms of whether this treatment, whether putting the women in the linear units is related to a legitimate end, I mean, the explanation is that it's easier to supervise. There's security reasons to put them in the linear as opposed to a pod because it's harder to secure the pod or it's harder to ensure security in a pod when there are fewer people on it. That strikes me as completely illogical, and maybe I'm missing something, but why is it easier to maintain security on a pod with 35 men than on a pod with a dozen women? Sure, Your Honor. As an attorney and not a corrections officer... All right, but you know what the record is, so you say you find what was submitted as the reason. I do, and the best way that I can explain it is how it was explained to me by Chief Zurich, and that's essentially that where there's larger prisoner populations, it's easier for corrections staff to supervise those larger numbers, even in a larger state, because more attention is drawn to a prisoner who might be doing something wrong. Essentially, it's the idea that there are watchers within the inmate population who are kind of self-enforcing. I would agree that on its face it sounds paradoxical, but the way it was explained to me is that where there are fewer people, such as if there are fewer women, there's 10 women in and go undetected because there are fewer watchers. That makes some degree of sense in that if there's a lot of unused space, extra space, a person could go off by themselves or with another person and not be observed, but I'm having difficulty why it wouldn't be a rather simple solution just to block off part of the pod unit if you're not using the whole thing. And it might be, Your Honor. I don't know the answer to that either. Neither the plaintiffs nor the defendants raised that issue in the record. Neither did the district court in its inquiry or its analysis of the record, and I would submit that maybe that is the factor that would come into play later on in litigation, but for purposes of a preliminary injunction where the stating that reason is good enough and we're going to deny the preliminary injunction until there's further litigation of the matter. And if Your Honor has no other questions, I would respectfully request affirmation and yield my time. Thank you. We'll hear rebuttal. Thank you, Your Honors. Thank you, Your Honor. First, I'd like to address the minimum standard argument, which really is a red herring. This case is about comparing general custody women to general custody men, not to the minimum standards. It's a comparison of the benefits and privileges they receive, of which we've shown that the men receive significantly more and are housed in significantly better housing conditions than the women. Turning to the exhaustion argument, the district court didn't premise its likelihood of success determination even in part on failure to exhaust. It was a separate section, and there's nowhere in their decision where they say we didn't meet likelihood of success because plaintiffs didn't show that we exhausted our administrative remedies. And then turning to the intermediate scrutiny discussion, the proper security concerns are just based off one line and one declaration, of which defendants said they had a number of reasons for moving the women, but they cited only one, and that it was more difficult to supervise a small number of women than a large number of inmates, which they have no further evidence that that is supported anywhere. There's no documentation. Chief Zurek didn't go through her analysis of why or talk about past experiences of the case, and that really fails to meet the demanding and searching analysis that is required under intermediate scrutiny. It's just one passing line in the declaration, and that one passing line is insufficient to meet intermediate scrutiny. You aren't challenging the importance of separating the general and closed custody prisoners. So the thing that started off this whole controversy, you're not suggesting that there was anything improper about wanting to respond to this corrections finding that the women should not be all housed together, no matter what their status. Absolutely not, Your Honor. The state commission ordered the jail to separate the classifications, and they have to comply with that. Our qualm is with how they did that and how they treated the general custody women after that directive. The directive wasn't to put them in these linear units. It was just to separate them. The way they chose to separate them, our position, obviously, it was discriminatory. If there's no further questions, we'll rest on our brief and ask this court and remand for the proceeding. Thank you. Thank you both. Nicely argued, and we will take the matter under advisement.